UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM MERRYMAN and ASHLEY MERRYMAN,

Plaintiffs,

Case No. 3:24-cv-00658-MMH-SJH

v.

ST. JOHNS RIVER WATER MANAGEMENT DISTRICT, et al.,

Defendants.
__________________________________/

**ST. JOHNS RIVER WATER MANAGEMENT DISTRICT**
**DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT**

Defendant St. Johns River Water Management District ("District"), and the individually-named District defendants,[1] pursuant to Federal Rules of Civil Procedure 8, 10, 11, and 12, respectfully move to dismiss plaintiffs William and Ashley Merryman's Amended Complaint, doc. 6, as follows:

## 1. Introduction

Plaintiffs sue some 57 defendants, including the District, various District employees and officials, Florida's First and Fifth District Courts of Appeal, the Florida Supreme Court, the Florida Governor, and the Florida Bar. Plaintiffs' various claims

---

[1] Plaintiffs name the following individual District employees and officials as defendants: Michael Register, Erin Preston, Mary Ellen Winkler, Keirsey Carns, Thomas Mayton, Jr., Karen Ferguson, Myra Perschnick, Kimberly Driggers, Bradley Purcell, Jeffrey Prather, Jeffrey Reindl, Allen Baggett, Melissa Parsons, Cameron Allen, Stacey Leitheiser, Robert Bradley, Maryam H. Ghayabi-White, Cole Oliver, J. Chris Peterson, Ryan Atwood, Doug Bournique, Douglas Burnett, Ron Howse, Janet Price, Courtney Waldron, and Richard Burklew. These individuals, and the District, are collectively referred to as the "District defendants."

appear to relate to their "submi[ssion of] multiple petitions to [the District] from July 2022 to present" regarding alleged "direct impact the Pine Ridge Stormwater Pond project has had on their private property as well as the environmental impact." Doc. 6, p. 34. Plaintiffs assert seven "Claims," i.e., counts, two of which are against the District. *Id.*, p. 33-39.[2] For various reasons, these "Claims," and the Amended Complaint as a whole, should be dismissed.

## 2. Facts alleged[3]

Plaintiffs base "Claim 1" against the District on the following allegations:

> The Plaintiff submitted multiple petitions to SJRWMD from July 2022 to present regarding the direct impact the Pine Ridge Stormwater Pond project has had on their private property as well as the environmental impact. Specifically, the Plaintiffs petitioned because the permitted project drained their private pond, interfered with their potable well, caused a sinkhole/subsidence on their property, damaged their residence and outbuildings, anticipated to send contaminated water to Black Creek, and backfilling of materials excavated from offsite was dumped into the project pond basin. Their petitions were wrongfully rejected absent adequate review and under the guise of a legal process, affecting their right to petition and due process. Furthermore, the rejections were based on the premise of legal insufficiency, not a standard of review for administrative hearings.
>
> Myra Perschnick and Kimberly Driggers emailed numerous correspondences to the Plaintiffs titled "SERVICE OF COURT DOCUMENTS." The communications included motions to dismiss or orders to dismiss which were meant to be filed with the Clerk of the . . . District. The . . . District is not a court. Therefore, the sending of these documents under this title appears to be fraudulent and an attempt to mislead the Plaintiffs into believing the process

[2] As discussed below, while the Amended Complaint lists several District employees and officials as defendants, and Claims 1 and 2 describe the manner in which those individuals are ostensibly "[i]nvolved" in the claims, plaintiffs assert Claims 1 and 2 explicitly against only the District. *Id.*, p. 33 ("Claim 1: Violation of Right to Petition and Due Process *by SJRWMD*" (emphasis added)), p. 36 ("Claim 2: Failure to Enforce Environmental Regulations *by SJRWMD*") (emphasis added)).

[3] For purposes of this motion, the District defendants accept as true the Amended Complaint's well-pled facts, but not its conclusory assertions, in particular legal conclusions.

> was official and legal. These actions directly contributed to the deprivation of the Plaintiff's rights to petition their government and due process.
>
> Erin Preston, Kiersey Carns, Thomas Mayton Jr., and Karen Ferguson fashioned a process that closely mimics that of an official court proceeding. Upon receipt of the Plaintiff's petition for administrative hearing, Carns, Mayton, or Ferguson would craft a "motion to dismiss." These motions would be submitted to their direct supervisor Erin Preston for consideration and to Clerk Courtney Waldron for filing with the "court." After arbitrary lapses of time, Erin Preston would craft an order granting the dismissal or dismissing the petition. Justifications for dismissing the petitions include an unlawfully elevated standard of review, legal insufficiency, and incoherent reasons unrelated to the original petition.
>
> The members of the . . . District Board and executive leaders were made aware of these unfair and fraudulent processes but did not correct the errancy of district staff. Their abstention allowed harm caused to the Plaintiffs to continue for approximately two years.
>
> The actions, inactions, communications, and omissions of all those listed in this claim directly or indirectly contributed to allowing a government permitted project meant for public use to adversely affect the Plaintiff's private property without just compensation or due process. Furthermore, the concerted actions of the defendants show an elaborate collaboration to deprive the Plaintiffs of their federal 1st and 14th amendment rights, conspiracy against those rights, deprivation of their right to honest services, and more.

Doc. 6, p. 34-35.

Plaintiffs base "Claim 2" against the District on the following allegations:

> Despite Merryman's reports of well interference and low water levels in his pond due to the Pine Ridge Stormwater Pond, SJRWMD failed to take adequate enforcement actions. Defendants did not conduct thorough investigations or enforce compliance with environmental regulations, leading to continued adverse impacts on Merryman's property and environmental interests for more than two years. The adverse impacts are current and ongoing as the date of this filing and include draining of their private pond, interference with their potable well, causing of a sinkhole/subsidence on the Merryman property, and damage to the Merryman residence and outbuildings. The original complaints by the Plaintiffs were made in July 2022 and they have yet to be made whole.

*Id.*, p. 37.

**3. Claims asserted and relief sought.**

Claim 1 is a claim for "Violation of Right to Petition and Due Process by SJRWMD." Doc. 6, p. 33. It cites to the following District employees and officials as being "involved": the Executive Director, four in-house attorneys, eight staff members, all members of the District's governing board, and the District Clerk. *Id.*, p. 33-34. It targets "[d]efendant's actions in rejecting the Plaintiff's petitions without valid legal grounds [which] infringed upon their right to petition the government." *Id.*, p. 35. Plaintiffs claim "[d]efendant's rejection of the petitions, the manner in which they were processed, and the simulation of judicial processes without a court deprived the Plaintiffs of procedural due process." *Id.*, p. 36.

Claim 2 is a claim for "Failure to Enforce Environmental Regulations by SJRWMD." *Id.*, p. 36. Like Claim 1, Claim 2 cites to the following District employees and officials as being "involved": the Executive Director, four in-house attorneys, eight staff members, all members of the District's governing board, and the District Clerk. *Id.*, p. 36-37. Plaintiffs claim "[d]efendants did not conduct thorough investigations or enforce compliance with environmental regulations. . . ." *Id.*, p. 37. Claim 2 appears to include nine subclaims: "Negligent Permit Approval"; "Refusal to Provide Information;" "Misleading Statements;" "Unauthorized Actions;" "Ignored Alternative Plans;" "Constitutional and Statutory Violations;" "First Amendment;" "Fourteenth Amendment," i.e., "deprived the Plaintiffs of due process"

and "unequal protection under the law"; and "Federal Environmental Statutes," i.e., "failed to enforce the Clean Water Act and related regulations." *Id.*, p. 38-39.

Plaintiffs seek various forms of injunctive relief, only two of which appear to involve the District. *Id.*, p. 48 ("[A]n injunction requiring the SJRWMD . . . to take specific actions to restore the Plaintiff's pond and well" and "implement a pollution clean-up and mitigation plan to contain and minimize the polluting effects of the Pine Ridge Stormwater Pond.").

Plaintiffs also seek various declarations, five of which appear to relate to the District. Namely, they request that the Court declare:

- the actions, decisions, and rulings of the SJRWMD . . . and all other named defendants violated the Plaintiff's constitutional rights and federal law.

- that SJRWMD violated the Clean Water Act and related state environmental regulations by failing to address the pollution and water depletion issues reported by the Plaintiffs.

- the permit for the Pine Ridge Stormwater Pond is invalid due to non-compliance with environmental review requirements.

- that SJRWMD must comply with specific environmental regulations and that their failure to do so in this case constitutes a breach of duty.

- that the involvement of . . . Erin Preston, Thomas Mayton Jr., Karen Ferguson, Keirsey Carns, Thomas Reeves, Maricruz Fincher . . . in adjudicating Merryman's petitions constitutes a conflict of interest and violates Merryman's right to an impartial review and due process.

*Id.*, p. 49-50.

Plaintiffs seek $5,850,000 in compensatory damages, $52,650,000 in punitive damages, and "Federal Oversight," namely the appointment of "a Special Master or

Federal Monitor" and "the establishment of biennial independent audits of state agencies. . . ." *Id.*, p. 50-51.

**4. Pleading and motion to dismiss standards.**

Rules 8 and 10 "require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support which claims and whether the plaintiff has stated any claims. . . ." *Fikes v. City of Daphne*, 79 F.3d 1079, 1082 (11th Cir. 1996) (citation omitted). To survive a motion to dismiss, a complaint must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need not contain detailed factual allegations, but legal conclusions or recitation of elements are not enough. *Twombly*, 550 U.S. at 555. Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A court may dismiss a complaint "on the basis of a dispositive issue of law, [when] no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted). And, "litigants appearing pro se in th[e Middle] District must adhere to the procedural requirements of the Federal Rules of Civil Procedure as well as the Local Rules. . . ." *Said v. Egyptian Embassy*, No. 8:22-CV-1498-WFJ-AEP,

2022 WL 16951910, at *1, n. 1 (M.D. Fla. Oct. 28, 2022) (citations omitted), *rpt. and rec. adopted*, 2022 WL 16950255 (M.D. Fla. Nov. 15, 2022).

**5. The Amended Complaint should be dismissed.**

**A. The Amended Complaint violates rules 8 and 10.**

Rule 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." The Amended Complaint fails to do that. Rule 10(b) also provides "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense." *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (explaining one type of shotgun pleading "commits the sin of not separating into a different count each cause of action or claim for relief"); *Marlborough Holdings Grp. v. Azimut-Benetti, SpA*, 505 F. App'x 899, 907 (11th Cir. 2013) ("Rule 8 . . . does not allow multiple distinct claims to be amassed into a single undifferentiated count."). Claims 1 and 2 (and the other claims) pile various claims and subclaims, against multiple defendants, into single counts. This manner of pleading in no way "promote[s] clarity." Fed. R. Civ. Proc. 10(b).

The Amended Complaint also violates rule 8, which "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678. And, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements" will not survive dismissal. *Twombly*, 550 U.S. at 555. Under Claim 1, plaintiffs refer to "First Amendment" and "procedural due process"

claims, but do not address the requisite elements that might apply to such claims, nor offer, in any reasonably targeted manner, facts to show entitlement to relief. Claim 2 is similarly deficient, but the problem is compounded as Claim 2 contains, along with the generally offered "Failure to Enforce Environmental Regulations" claim, at least nine subclaims, each of which implicates different elements.[4]

The Amended Complaint fails to satisfy the fundamental rule 8 and 10 requirements, and should be dismissed on this basis alone.

**B. The individual District defendants should be dismissed as named parties—Claims 1 and 2 explicitly target only the District, and insufficient facts are pled against the individual District defendants to implicate their involvement as individually-named parties.**

The Amended Complaint names 26 District employees and officials as supposed defendants. From the various checked boxes in "Section I(B)" of the Amended Complaint, plaintiffs ostensibly target (with three exceptions) these individuals in their "[i]ndividual capacity[ies]" *and* "[o]fficial capacity[ies]." Doc. 6, p. 2-3, 9-15.[5] However, Claims 1 and 2 do not, in fact, plead claims against any defendant in any individual capacity. Rather, Claims 1 and 2 are specifically directed against the District—Claim 1 is titled "Violation of Right to Petition and Due Process *by SJRWMD*," and Claim 2 is titled "Failure to Enforce Environmental Regulations

[4] For example, under Claim 2, plaintiffs claim "[d]efendants failed to enforce the Clean Water Act and related regulations, leading to significant and ongoing environmental harm," without offering supporting factual allegations. Doc. 6, p. 39.

[5] The Amended Complaint targets Michael Register (Executive Director), Erin Preston (General Counsel), Mary Ellen Winkler (Assistant Executive Director) solely in their official capacities. Doc. 6, p. 2-3.

*by SJRWMD*." Doc. 6, p. 33, 36 (emphasis added). Accordingly, while the individual defendants are supposedly "[i]nvolved" in those claims according to plaintiffs, *id*., p. 33, 36, the individual District defendants are not actually named as party defendants under Claims 1 and 2, and should be dismissed as named parties to this action.

The individual District defendants should also be dismissed as redundant, to the extent they are named and targeted in their official capacities. "Official capacity claims are tantamount to a suit against the government entity involved." *Jones v. Cannon*, 174 F.3d 1271, 1293 n. 15 (11th Cir. 1999); *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[S]uits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent. . . ." (citation omitted)). As indicated, the Amended Complaint attempts to target the individual District defendants in their individual *and official* capacities. Doc. 6, p. 2-3, 9-15. This is redundant, warranting dismissal of the individual defendants in their official capacities. *See C.P. by & through Perez v. Collier Cnty*., 145 F. Supp. 3d 1085, 1091 (M.D. Fla. 2015) ("[T]he official capacity claims against [deputies] Driscoll and Flanagan are duplicative and redundant of the claims against the sheriff in his official capacity and/or the County" and "are dismissed. . . .").

The individual District defendants should also be dismissed to the extent plaintiffs attempt to sue them *individually*—plaintiffs simply do not plead facts upon which individual liability might be imposed. Notably, plaintiffs' descriptions of the ways in which the individuals were supposedly "[i]nvolved" refer to them in their

*official* capacities: "[a]s Executive and Assistant Directors," doc. 6, p. 33, 36; "[a]s legal counsel," *id*.; as "[s]taff involved" or "[s]taff responsible," *id*.; as "Board members," *id*., p. 33, 37; and "[a]s [District] clerk," *id*., p. 34, 37. And, the Amended Complaint's pled facts do not indicate any effort to target them beyond their official capacities. While plaintiffs may suggest they are attempting to target these individuals under "color of law," there are no pled facts to connect these individuals' alleged actions with any supposed, clearly-delineated constitutional deprivation. *See Baker v. Blount*, No. 8:12-CV-2698-T-35MAP, 2015 WL 13851404, at *1 (M.D. Fla., Mar. 17, 2015) ("To pursue a claim in a defendant's individual capacity, the plaintiff must allege facts showing that the defendant was personally involved in the alleged deprivation of the plaintiff's civil rights."). And, to the extent plaintiffs attempt to assert negligence claims against these individuals (which appears to be the essence of Claim 2, at least in part), again, plaintiffs do not allege facts that might subject these individuals to *individual* tort liability. *See* § 768.28(9)(a), Fla. Stat. ("No officer . . . shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer . . . acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.").

Regardless of whether any claim has been stated against the District, the individual District defendants should be dismissed from this action as named parties.

**C. The individual District defendants are immune, in whole or in part, from the claims against them.**

**I. The District's Board members should be dismissed as they are entitled to legislative immunity.**

"[S]tate legislators enjoy common-law immunity from liability for their legislative acts, an immunity that is similar in origin and rationale to that accorded Congressmen. . . ." *See Supreme Ct. of Va. v. Consumers Union of the U.S., Inc.*, 446 U.S. 719, 732 (1980). Legislative immunity is construed "broadly to effectuate its purpose" and to protect legislators from judicial interference, intimidation, and hostility. *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501-02 (1975); *see Tenney v. Brandhove*, 341 U.S. 367, 377 (1951) ("The privilege would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial . . . or to the hazard of a judgment against them based upon a jury's speculation as to motives."). Legislators are immune when "acting within their legislative roles," and performing "legislative acts." *Woods v. Gamel*, 132 F.3d 1417, 1419 (11th Cir. 1998) (quoting *Tower v. Glover*, 467 U.S. 914, 920 (1984)). "[E]ngaging in legislative activity" means "conduct in the furtherance of [the legislators'] duties" which includes "voting, debate and reacting to public opinion" all of which "are manifestly in furtherance of legislative duties." *DeSisto Coll., Inc. v. Line*, 888 F. 2d 755, 765 (11th Cir. 1989). An act is legislative "when it is policymaking and of general application." *Woods*, 132 F.3d at 1420 (citation omitted). Legislative immunity is "absolute and consequently

d[oes] not depend upon the motivations of the legislators." *Wood v. Strickland*, 420 U.S. 308, 317 (1975).

Legislative immunity has been extended to local legislators, who are "likewise absolutely immune from suit under § 1983 for their legislative activities." *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998). Florida law also recognizes common law absolute legislative immunity from state law claims. *See Fridovich v. Fridovich*, 598 So. 2d 65, 68 (Fla. 1992) ("[I]t is necessary for them to be protected not only from civil liability, but also from the danger of even an unsuccessful civil action. To this end, it is necessary that the propriety of their conduct not be inquired into indirectly by either court or jury in civil proceedings brought against them for misconduct in their position. Therefor[e] the privilege, or immunity, is absolute and the protection that it affords is complete.") (quoting Restatement (Second) of Torts § 584, at 243) (emphasis omitted); *see Gay v. Jupiter Isl. Compound, LLC*, 358 So. 3d 780, 787 (Fla. 4th DCA 2023).

Claims 1 and 2 identically target "Robert Bradley, Maryam H. Ghyabi-White, Cole Oliver, J. Chris Peterson, Ryan Atwood, Doug Bournique, Douglas Burnett, Ron Howse, [and] Janet Price," all of whom are members of the District's governing board. Doc. 6, p. 33, 37. Under Claim 1, plaintiffs claim these board members "approved policies leading to the rejection of petitions" and "were made aware of district staff actions and abstained from correcting deficiencies." *Id.*, p. 33. Under Claim 2, plaintiffs claim they "overs[aw] policy decisions affecting regulatory enforcement" and "were notified of the activities in which District staff were engaged and abstained from

correcting the deficiencies." *Id.*, p. 37. "[A]pprov[ing] policies" and "overseeing policy decisions" is quintessential legislative activity, for which the board members are legislatively immune. *See Woods*, 132 F. 3d at 1420 ("The county commissioners deliberated and then voted on a budget resolution. . . . Defendant commissioners are entitled to absolute immunity. . . ."); *Espanola Way Corp. v. Meyerson*, 690 F. 2d 827, 829 (11th Cir. 1982) ("[T]he vote of a city councilman constitutes an exercise of legislative decision-making"). Thus, the board members should be dismissed from this action.

## II. The individual District defendants are entitled to qualified immunity from any constitutional claims against them.

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights. . . ." *Ashcroft*, 556 U.S. at 672 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To be entitled to qualified immunity, an official must have been "acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quotation marks and citations omitted). When a defendant acts within the scope of discretionary authority, the burden "shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citation omitted). A plaintiff can show qualified immunity is not appropriate by establishing the defendant's conduct violated plaintiff's constitutional rights, and the violation was clearly established at the time. *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th

Cir. 2010) (citations omitted). These requirements may be addressed in any order. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The plaintiff "bear[s] the burden of showing that the federal rights allegedly violated were clearly established." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996) (citation omitted).

Claims 1 and 2 allege discretionary acts by the individual District defendants, for example, with regard to discretionary decisions as to documents to be filed in proceeding under chapter 120, Fla. Stat., as to whether to "enforce" regulations, and as to whether to issue permits.[6] Thus, these defendants were within the scope of their discretionary authority when the allegedly wrongful acts occurred. Accordingly, the burden here shifts to plaintiffs to show the violation of a clearly established constitutional right. However, the Amended Complaint does not implicate any such violation, at least in the sense of a sufficiently-pled claim.

Claims 1 and 2 reference plaintiffs' alleged First Amendment right to petition the government. Doc. 6, p. 35, 38. But, plaintiffs petitioned the District and took part in a chapter 120 proceeding. They simply disagree with the outcome. So, there has been no "right to petition" violation here. *See Anderson v. City of Naples*, No. 210CV111FTM36SPC, 2011 WL 13294592, at *3 (M.D. Fla. Mar. 10, 2011) (holding there was no "right to petition" violation where a claimant submitted a complaint to a police department, even though the department found no wrongdoing as claimed).

---

[6] Chapter 102, Fla. Stat., contains Florida's Administrative Procedure Act.

Claims 1 and 2 also reference a "procedural due process" violation. Doc. 6, p. 36, 39. A "procedural due process clause violation requires . . . a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process." *Cryder v. Oxendine*, 24 F.3d 175, 177 (11th Cir. 1994). It is unclear what possible "constitutionally-protected liberty or property interest" plaintiffs' claims might implicate. And, plaintiffs were not deprived of any "due process" right to challenge the complained-of permit—they initiated a chapter 120 challenge, but again, they apparently did not like the outcome. Moreover, there was entirely *adequate* process available to plaintiffs. Chapter 120 provides a petitioner with a fulsome opportunity to present facts, evidence, and argument. *See* §§ 120.569, 120.570, Fla. Stat. And, "[a] party who is adversely affected by final agency action is entitled to judicial review." § 120.68, Fla. Stat.[7]

As the individual District defendants were within the scope of their discretionary authority when the allegedly wrongful acts occurred, and as plaintiffs fail to identify any constitutional violation, the individual District defendants are entitled to qualified immunity from plaintiffs' constitutional claims under Claims 1 and 2.

### III. Florida's litigation privilege bars plaintiffs' state law claims against the District's in-house lawyers.

Florida's litigation privilege "provides all persons involved in judicial proceedings, including parties and counsel, an absolute privilege from civil liability for

[7] Claim 2 also references "unequal protection under the law," but offers no allegations to support such claim. Doc. 6, p. 39.

acts taken in relation to those proceedings." *N. Star Cap. Acquisitions, LLC v. Krig*, 611 F. Supp. 2d 1324, 1329 (M.D. Fla. 2009) (citing *Levin, Middlebrooks, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)); *see Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 380-81 (Fla. 2007) ("[T]he litigation privilege applies in all causes of action. . . ."). Claims 1 and 2 are based on actions the District's lawyers allegedly took during a chapter 120 proceeding. Doc. 6, p. 33. During that proceeding, the District was acting in a quasi-judicial capacity. *See* §§ 120.569, 120.57, Fla. Stat.; *see Cherry Commc'ns, Inc. v. Deason*, 652 So. 2d 803, 804 (Fla. 1995) ("Florida's Administrative Procedure Act empowers administrative agencies . . . to exercise quasi-judicial functions."). Thus, these lawyers are entitled to absolute privilege from civil liability as to plaintiffs' state law claims against them.

**D. Plaintiffs do not plead viable *Monell* claims against the District.**

"Although . . . government entities . . . are 'persons' within the scope of § 1983, and subject to liability, [plaintiffs] cannot rely upon the theory of respondeat superior to hold the [District] liable." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 692 (1978)). Rather, plaintiffs must allege the District had a "policy or custom" of deliberate indifference that led to the violation of a constitutional right. *Monell*, 436 U.S. at 694; *see McDowell*, 392 F.3d at 1289 ("[A] plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate

indifference to that constitutional right; and (3) that the policy or custom caused the violation.").

While plaintiffs refer to § 1983 in their Amended Complaint and assert Claims 1 and 2 (which attempt to assert state law claims, and supposed constitutional claims) against the District, plaintiffs do not allege facts to support the elements of a *Monell* claim against the District. Thus, to the extent plaintiffs attempt to plead § 1983 claims against the District, they are deficient and should be dismissed.

### E. Res judicata and collateral estoppel, and the *Rooker-Feldman* doctrine, bar plaintiffs' claims.

"[R]es judicata bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised." *Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) (citation omitted); *see Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").[8] "The idea underlying res judicata is that if a matter has already been decided, the petitioner has already had his or her day in court, and for purposes of judicial economy, that matter generally will not be reexamined again in *any* court (except, of course, for appeals by right)." *Topps*, 865 So. 2d at 1255 (citation omitted, emphasis in original). The doctrine "applies when four identities are present: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of persons

[8] To determine the effect of a state judgment in federal court, the rendering state's preclusion rules apply. *Lozman v. City of Riviera Beach*, 713 F. 3d 1066, 1074 (11th Cir. 2013).

and parties to the action; and (4) identity of the quality of the persons for or against whom the claim is made." *Id*. (citations omitted).

The collateral estoppel doctrine, also known as estoppel by judgment or issue preclusion, "bars 'the parties from litigating in the second suit issues—that is to say points and questions—common to both causes of action and which were actually adjudicated in the prior litigation.' " *Cook v. State*, 921 So. 2d 631, 634 (Fla. 2d DCA 2005) (quoting *Stogniew v. McQueen*, 656 So. 2d 917, 919 (Fla. 1995)). It "applies where: (1) the identical issues were presented in a prior proceeding; (2) there was a full and fair opportunity to litigate the issues in the prior proceeding; (3) the issues in the prior litigation were a critical and necessary part of the prior determination; (4) the parties in the two proceedings were identical; and (5) the issues were actually litigated in the prior proceeding." *Topps*, 865 So. 2d at 1255 (Fla. 2004). "Collateral estoppel may be applied to bar subsequent causes of action even where the second claim requires proof of different essential facts than those required to be proved in the initial suit." *Larimore v. State*, 76 So.3d 1121, 1123 (Fla. 1st DCA 2012).

"The *Rooker–Feldman* Doctrine is 'at a minimum' coextensive with the principles of res judicata and collateral estoppel." *Bosdorf v. Beach*, 79 F. Supp. 2d 1337, 1340 (S.D. Fla. 1999) (citing *Doctor's Associates, Inc. v. Distajo*, 107 F.3d 126, 137 (2d Cir. 1997)).[9] *Rooker-Feldman* "bars federal district courts from reviewing state court

---

[9] The doctrine has its origins in two United States Supreme Court cases: *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

decisions." *Nicholson v. Shafe*, 558 F.3d 1266, 1270 (11th Cir. 2009); *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021) ("*Rooker-Feldman* means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began."). It precludes review of claims that were raised in state court and those "inextricably intertwined" with that state-court judgment. *Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009).

Regardless of the Amended Complaint's various pleading deficiencies, and plaintiffs' failure to state one or more viable claims against the District defendants, it is apparent that, through this action, plaintiffs are seeking to have this Court entertain some manner of relitigation of matters already litigated between the District and plaintiffs via the aforementioned chapter 120 proceeding, and any subsequent appeals.[10] This is particularly clear when considering the ultimate declaratory and injunctive relief plaintiffs seek against the District, e.g., a declaration that "the permit for the Pine Ridge Stormwater Pond is invalid due to non-compliance with environmental review requirements." Doc. 6, p. 50. Under the res judicata and

[10] Plaintiffs do not, directly and clearly, inform the Court of William Merryman's prior appeals before the First and Fifth District Court of Appeal (although they attempt to sue those courts). The Courts of Appeal per curiam affirmed or dismissed each of those appeals. Doc. 18-1 (Case No. 1D22-3485, per curiam dismissed, 11/21/22); Doc. 18-2 (Case No. 1D22-3774, per curiam affirmed, 5/2/23); Doc. 18-3 (Case No. 5D23-1133, per curiam affirmed, 1/30/24). Under Federal Rule of Evidence 201, the Court may take judicial notice of the existence and pendency of these appeals, and the attached orders. *See Lamoureux v. Fla.*, No. 23-11997, 2024 WL 1460311, at *1 (11th Cir. Apr. 4, 2024) ("Here, we take judicial notice of the state court's order dismissing the underlying action after it was remanded.").

collateral estoppel doctrines, and the *Rooker-Feldman* doctrine, plaintiffs are barred from relitigating these issues, and the Amended Complaint should be dismissed.

**F. Plaintiffs' state law negligence claims under Claim 2 warrant dismissal.**

**I. Plaintiffs fail to allege compliance with section 768.28(6)(a)'s presuit notice requirement.**

Plaintiffs attempt to plead some manner of state law negligence claim under Claim 2. Doc. 6, p. 35. Section 768.28, Fla. Stat., limitedly waives sovereign immunity as to tort claims against the State of Florida and its subdivisions, to the extent therein specified. The statute imposes conditions on that waiver, including a presuit notice requirement. § 768.28(6)(a), Fla. Stat. "[T]he requirements of notice . . . and denial . . . are conditions precedent to maintaining an action. . . ." § 768.28(6)(b), Fla. Stat. A claimant must provide presuit notice, and such "compliance must be alleged in the complaint." *Scullock v. Gee*, 161 So. 3d 421, 423 (Fla. 2d DCA 2014) (citation omitted). Failure to allege compliance subjects a complaint to dismissal. *Id.*; *Mason v. Highlands Cnty. Bd. of Cnty. Comm'rs*, 788 So. 2d 1122, 1123 (Fla. 2d DCA 2001) (held that failure to comply with section 768.28(6) warranted dismissal without prejudice).

The Amended Complaint does not allege plaintiffs provided presuit notice of their negligence claims to the District defendants. Thus, the Amended Complaint (or at a minimum, Claim 2) warrants dismissal.

## II. To the extent Claim 2 asserts state law negligence claims, it is barred by sovereign immunity as it targets the exercise of discretionary, governmental power.

Claim 2 is titled as a claim for "Failure to Enforce Environmental Regulations by SJRWMD," and includes nine subclaims. Doc. 6, p. 38-39. Such "Failure to Enforce" claim is clearly barred by sovereign immunity. As the Florida Supreme Court has explained:

> Clearly, . . . boards, . . . and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions. . . .
>
> How a governmental entity, through its officials and employees, exercises its discretionary power to enforce compliance with the laws duly enacted by a governmental body is a matter of governance, for which there never has been a common law duty of care. This discretionary power to enforce compliance with the law, as well as the authority to protect the public safety, is most notably reflected in the discretionary power given to judges, prosecutors, arresting officers, and other law enforcement officials, as well as the discretionary authority given fire protection agencies to suppress fires. This same discretionary power to enforce compliance with the law is given to regulatory officials. . . .
>
> . . . .
>
> [T]here is no governmental tort liability for the action or inaction of governmental officials or employees in carrying out the[se] discretionary governmental functions. . . .

*Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 919-21 (Fla. 1985); *see Detournay v. City of Coral Gables*, 127 So. 3d 869, 873 (Fla. 3d DCA 2013) ("[T]he City's discretion to file, prosecute, abate, settle, or dismiss a building and zoning enforcement action . . . is an executive function that cannot be supervised by the courts," and stating

the court's decision "dovetails with the cases holding that a writ of mandamus cannot issue against a city on behalf of a private party to require the city to enforce its building and zoning laws against another private party.").

The subclaims under Claim 2 fare no better.[11] Sovereign immunity clearly bars claims that, for example, the District failed to conduct "thorough investigations," or negligently approved a permit. Doc. 6, p. 38; *see Trianon Park*, 468 So. 2d at 919-21.

To the extent Claim 2 asserts state law negligence claims, sovereign immunity requires its dismissal.

### G. Plaintiffs fail to state viable claims as to various, referenced federal statutes.

The Amended Complaint refers to: "Honest Services Fraud (18 U.S.C. 1346);" "Clean Water Act (33 U.S.C. 1251);" the "National Environmental Policy Act (42 U.S.C. 4332);" the "False Claims Act (31 U.S.C. 3729 - 3733);" and the "Freedom of Information Act (5 U.S.C. 552)." Doc. 6, p. 27. However, Claims 1 and 2 do not plead facts to support, nor otherwise attempt to directly assert, claims under these laws, and many of the federal statutes cited do not give rise to civil causes of action or do not apply to the District.[12] Thus, to the extent plaintiffs attempt to plead claims under these laws, such claims fail to state claims upon which relief can be granted.

---

[11] Again, the subclaims are deficiently pled under rules 8 and 10, as plaintiffs make no effort to address any elements that might apply to such subclaims, which are, in any event, improperly piled into a single count.

[12] Among other federal laws, plaintiffs refer to the Freedom of Information Act. This Act applies to records created by federal agencies and does not cover records held by Congress, the courts, or state and local government agencies. *See* § 5 U.S.C. § 551 (defining "agency" as "each authority of

### H. Plaintiffs' requests for injunctive relief are deficiently pled, and should be dismissed or stricken.

"In determining whether a permanent injunction should be entered, Plaintiff bears the burden of establishing . . . '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *OneSource Facility Servs., Inc. v. Mosbach*, No. 205CV525FTM34DNF, 2008 WL 11430039, at *4 (M.D. Fla. Nov. 20, 2008) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)). Plaintiffs seek various forms of injunctive relief. Doc. 6, p. 47-49. However, they make no effort to address, nor offer well-pled allegations, to support each of the above elements.

That said, plaintiffs could not satisfy the above elements. "An injury is 'irreparable' only if it cannot be undone through monetary remedies. . . ." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990); *see Carmichael v. Jones*, No. 4:16CV238-RH/CAS, 2016 WL 3748728, at *2 (N.D. Fla. June 23, 2016) ("The availability of . . . damages means there cannot be a finding of irreparable injury."). Money damage claims are available to plaintiffs. Indeed, they seek money damages under all counts. This negates any effort they might make to satisfy the "irreparable injury" element.

---

the Government of the United States. . . ."). Thus, the District could not be subjected to a claim under the Act.

Also, the right to pursue an appeal is an adequate remedy at law. *Tarver v. Reynolds*, 808 F. App'x 752, 755 (11th Cir. 2020); *Sibley v. U.S. Supreme Ct.*, 136 F. App'x 252, 254 (11th Cir. 2005) ("Sibley enjoyed a [right to appeal], and thus his claim for injunctive relief must also fail."). Plaintiffs had a right to appeal adverse rulings and orders from the chapter 120 proceeding. *See* § 120.68, Fla. Stat. Based on the availability of an appeal, plaintiffs cannot show a lack of an adequate remedy at law.

As plaintiffs fail to adequately plead any form of injunctive relief against the District defendants, their injunction requests against the District defendants should be dismissed or stricken.

**I. Plaintiffs' punitive damage claims should be dismissed or stricken.**

Plaintiffs seek $52,650,000 in punitive damages. Doc. 6, p. 50. This demand appears to apply to each stated claim, and each named defendant.

As to plaintiffs' request for punitive damages against the District under federal law, "local government entities . . . are immune from punitive damage claims under 42 U.S.C. § 1983." *D.L. by & through S.L. v. Hernando Cnty. Sheriff's Off.*, 620 F. Supp. 3d 1182, 1203 (M.D. Fla. 2022) (quoting *Morris v. Crow*, 825 F. Supp. 295, 299 (M.D. Fla. 1993)). To the extent plaintiffs request punitive damages against the District under state law, sovereign immunity bars recovery of such damages. *See* § 786.28(5)(a), Fla. Stat. ("[L]iability shall not include punitive damages. . . .").

As to plaintiffs' claim for punitive damages against the individual District defendants, in the § 1983 context, such damages are authorized only "when the

defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Under Florida law, punitive damages are available against an officer only if he or she "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *See* § 786.28(9)(a), Fla. Stat. The Amended Complaint does not allege the individual District defendants acted with evil motive or intent, in bad faith or with malicious purpose, or in a manner exhibiting wanton and willful disregard. Thus, any punitive damages claims against them should be dismissed or stricken.

**J. Plaintiff Ashley Merryman should be stricken from the Amended Complaint, or dismissed from this action, as she did not sign the Amended Complaint in violation of rule 11.**

Rule 11(a) provides that "[e]very pleading . . . must be signed . . . by a party personally if the party is unrepresented." And, "[t]he court must strike an unsigned paper unless the omission is promptly corrected after being called to the . . . party's attention." *Id.* Plaintiff Ashley Merryman did not sign the Amended Complaint. Doc. 6, p. 6. Thus, she violated rule 11, and should be stricken from the Amended Complaint, or dismissed from this action as a party.

**6. Conclusion.**

For the various reasons discussed, the District defendants respectfully submit the Amended Complaint should be dismissed.

LOCAL RULE 3.01(g) CERTIFICATION

The District defendants certify: A) they, through undersigned counsel, conferred with plaintiffs before filing this motion; B) plaintiffs do not agree on the resolution of all or part of this motion; and C) this motion is opposed, and the conferral occurred via e-mail on October 8, 2024.

Respectfully submitted this 8th day of October, 2024.

By: /s/ Dale A. Scott
Dale A. Scott, Esq.
Fla. Bar No. 568821
dscott@roperpa.com
ehemphill@roperpa.com
Roper, Townsend & Sutphen, P.A.
255 S. Orange Ave., Ste. 750
Orlando, FL 32801
Tel: 407-897-5150
Fax: 407-897-3332
Counsel for St. Johns River Water Management District, Michael Register, Erin Preston, Mary Ellen Winkler, Krsey Carns, Thomas Mayton, Jr., Karen Ferguson, Myra Perschnick, Kimberly Driggers, Bradley Purcell, Jeffrey Prather, Jeffrey Reindl, Allen Baggett, Melissa Parsons, Cameron Allen, Stacey Leitheiser, Robert Bradley, Maryam H. Ghayabi-White, Cole Oliver, J. Chris Peterson, Ryan Atwood, Doug Bournique, Douglas Burnett, Ron Howse, Janet Price, Courtney Waldron, and Richard Burklew

CERTIFICATE OF SERVICE

I certify that a copy of this document has been furnished via CM/ECF on this 8th day of October, 2024, to:

William Merryman
Ashley Merryman
merrymanfamilyfarm@gmail.com
1117 Buggy Whip Trl.
Middleburg, FL 32068
Pro se plaintiffs

William B. Armistead, Esq.
warmistead@coppinsmonroe.com
kflemming@coppinsmonroe.com
kwillis@coppinsmonroe.com
Coppins Monroe, P.A.
2316 Killearn Center Blvd., Ste. 202
Tallahassee, FL 32309
Counsel for Northwest Florida Water Management District and J. Breck Brannen, Esq.

James Waczewski, Esq.
james.waczewski@myfloridalegal.com
Senior Assistant Attorney General
Office of the Attorney General
PL - 01, The Capitol
Tallahassee, FL 32399-1050
Counsel for South Florida Water Management District, Maricruz R. Fincher, Esq., First District Court of Appeal, Lori S. Rowe, M. Kemmerly Thomas, Adam Tanenbaum, Division of Administrative Hearings (Department of Management Services), Darren A. Schwartz, Esq., Florida Supreme Court, John A. Tomasino, Florida Office of the Governor, Ron DeSantis, Florida Department of Environmental Protection, Michael Lynch, Shawn Hamilton, Justin Wolfe, Esq., Fifth District Court of Appeal, F. Rand Wallis, Harvey L. Jay, and Paige Kilbane

By: /s/ Dale A. Scott
Dale A. Scott, Esq.